UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| 18 AUDUBON PLACE, LLC, RICHARD GOLDENBERG, KAREN B. GOLDENBERG | CIVIL ACTION |
| | NO. 18-9791 |
| VERSUS | SECTION M (1) |
| SBN V FNBC LLC, et al. | |

## **ORDER & REASONS**

On October 31, 2018, the debtor, 18 Audubon Place, LLC (the "Debtor"), and tenants, Richard Goldenberg and Karen Goldenberg (the "Tenants") (collectively "Appellants"), filed an emergency motion (R. Doc. 4) to stay portions of the bankruptcy court's order of October 16, 2018 (the "Order")[1] pending appeal pursuant to Rules 7062 and 8007(b) of the Federal Rules of Bankruptcy Procedure and without posting bond pursuant to Rule 62(d) of the Federal Rules of Civil Procedure. In relevant part, the bankruptcy court ordered the eviction of Tenants from 18 Audubon Place, New Orleans (the "Property") by no later than November 10, 2018. Appellants appealed the Order to this Court on October 19, 2018,[2] and the appeal remains pending. As required, the Debtor first sought this stay from the bankruptcy court, but it was denied.[3] Appellants now seek relief in this Court.

Appellants requested expedited consideration of their motion for stay, which the Court granted, ordering that any oppositions to the motion be filed by November 5 and that the motion for stay would be submitted on November 7.[4] Thereafter, appellee SBN V FNBC LLC ("SBN")

---

[1] R. Doc. 4-2; Bkr. Dkt. 57.
[2] R. Doc. 1.
[3] R. Docs. 4-12, 4-13; Bkr. Dkt. 84, 85.
[4] R. Doc. 5.

filed an opposition to the motion for stay (R. Doc. 6), as did the appointed trustee, David V. Adler (the "Trustee"), who also joined SBN's opposition (R. Doc. 8). Appellees Audubon Place Commission, Inc. and Trinity Episcopal School joined SNB's opposition as well (R. Docs. 7, 9).

On November 5, 2018, Appellants filed yet another ex parte emergency motion to stay the Order pending appeal (R. Doc. 10), to which SBN filed an opposition (R. Doc. 11). This motion asks the Court to stay execution of the Order through November 20, 2018, to allow this Court additional time to rule on Appellants' first motion to stay and to provide Appellants more time to comply with the Order of eviction.

Having considered the parties' memoranda and the applicable law, the Court issues this Order & Reasons.

**A. The Stay**

"The decision of a bankruptcy court to deny a stay pending appeal will be reviewed for abuse of discretion." *In re Permian Producers Drilling, Inc.,* 263 B.R. 510 (W.D. Tex. 2000) (citing *In re Barrier,* 776 F.2d 1298, 1299-1300 (5th Cir. 1985)). "A bankruptcy court abuses its discretion if it seriously errs in its determination of whether the moving party has established a case meriting injunctive relief." *Id.* A district court reviews a bankruptcy court's conclusions of law *de novo* and findings of fact for clear error. *In re First S. Savings Ass'n*, 820 F.2d 700, 711 (5th Cir. 1987). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Id.* (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)).

A stay is a discretionary remedy to be granted or denied within the sound judgment of the district court. *See Nken v. Holder*, 556 U.S. 418, 434 (2009); *Arnold v. Garlock*, 278 F.3d 426,

438 (5th Cir. 2001). To obtain a stay in a district court pending appeal from a bankruptcy court's decision, the appellants bear the burden of establishing each of the following four elements:

1. A likelihood of success on the merits, or, if a serious legal question is involved, a substantial case on the merits and equities weighing heavily in favor of granting the stay;

2. irreparable injury;

3. that the stay will not harm other parties; and

4. that the stay would serve the public interest.

*In re Javier Estrada, Inc.*, 2010 WL 1416778, at *1 (S.D. Tex. Apr. 5, 2010) (citing *Arnold*, 278 F.3d at 438-42)). "Only 'if the balance of the equities (i.e. consideration of the other three factors) is … heavily tilted in the movant's favor' will we issue a stay in [the] absence [of a likelihood of success on the merits], and, even then, the issue must be one with patent substantial merit." *Ruiz v. Estelle* (*Ruiz II*), 666 F.2d 854, 856-57 (5th Cir. 1982) (quoting *Ruiz v. Estelle* (*Ruiz I*), 650 F.2d 555, 565-66 (5th Cir. 1981)).

Before examining these elements in the context of this case, it is instructive to review in brief the long and tortured history of how the parties have come to this pass. This review is taken in part from the factual findings of the bankruptcy court, which Appellants have not attempted to question and as to which this Court finds no clear error, and the public record of the bankruptcy court.

The Debtor, whose members are Richard Goldenberg and his son, exists for no other purpose than to own the Property.[5] Goldenberg previously owned the Property and transferred it to the Debtor on May 31, 2012.[6] SBN holds a mortgage on the Property to secure a note that had been payable in $26,175.00 monthly installments at the time the Debtor filed bankruptcy on

---

[5] R. Doc. 4-13 at 2.
[6] *Id.*

August 1, 2018, in the Western District of Louisiana.[7] SBN's proof of claim reflects a principal balance, accrued and unpaid interest, attorney fees, late charges, insurance premiums, expenses and costs owed by the Debtor of nearly $5.5 million.[8] No payments have been made on the SBN debt since August 2016.[9] The amount necessary to bring the SBN note out of default, as of the date bankruptcy was filed, is at least $658,947.55.[10] In addition, the Debtor owes property taxes.[11]

Before filing bankruptcy, the Debtor and Tenants had entered a written lease on July 23, 2018, which was recorded on July 31, 2018. The lease requires payment of $25,000 in monthly rent, plus payment of property taxes and insurance, and purports to reflect a term from July 2016 through December 2019. As of the date of the bankruptcy filing, the Debtor scheduled past due rent owed by the Tenants in an amount ranging between $600,000 and $1.2 million.[12]

But the troubled history of this Property did not begin with the Debtor. Before transferring the Property to the Debtor in 2012, Richard Goldenberg, individually, filed bankruptcy in July 2010 to forestall an earlier foreclosure sale of the Property.[13] The then noteholder represented in the bankruptcy that no payment had been made on the indebtedness on the Property since August 2009 and that property taxes and insurance had not been paid.[14] Goldenberg sought to reorganize his debts, including those associated with the Property; meanwhile, his family continued to occupy the Property.[15] However, Goldenberg ultimately failed to comply with the plan of organization he

---

[7] *Id.* at 1 & 3.
[8] *Id.* at 3.
[9] *Id.*
[10] *Id.*
[11] *Id.*
[12] *Id.*
[13] R. Doc. 6 at 4-5 (citing to bankruptcy docket).
[14] *Id.* (citing to bankruptcy docket).
[15] *Id.* at 5-6 (citing to bankruptcy docket).

had proposed and the bankruptcy court had approved, which had included relinquishing the Property.[16] Goldenberg did so by transferring the Property to the Debtor back in 2012.[17]

On October 11, 2016, SBN's predecessor in interest sought to foreclose on the Property for the Debtor's nonpayment of the mortgage indebtedness.[18] Thereafter, in December 2016, after Goldenberg failed to appear at a hearing to show cause why he had not complied with the court's order to cure certain deficiencies under the plan of reorganization, the bankruptcy court dismissed Goldenberg's individual bankruptcy case with prejudice, ordered that he was not entitled to a discharge, and barred Tenants from filing a bankruptcy case for a period of five years.[19]

On August 23, 2018, venue in the Debtor's bankruptcy case was transferred to the Eastern District of Louisiana, and on October 3, 2018, the bankruptcy court appointed the Trustee under 11 U.S.C. § 1104.[20] On October 10, 2018, the bankruptcy court conducted a hearing and took evidence on SBN's motion to evict the Debtor from the Property.[21] The court held that the recorded lease was unenforceable as to third parties pursuant to Section 13:3888(A) of the Louisiana Revised Statutes and ordered Tenants to vacate the Property by November 10, 2018, because "the obligations owed under the alleged agreement between Debtor and the [Tenants] were in default, the [Tenants] had not paid rent timely postpetition, and the Trustee was requesting possession of the Property."[22]

Against this backdrop, the Court now examines the elements required for a stay.

---

[16] *Id.* at 6 (citing to bankruptcy docket).
[17] *Id.* (citing to bankruptcy docket).
[18] *Id.* at 3 (citing to bankruptcy docket).
[19] *Id.* at 7 (citing to bankruptcy docket).
[20] R. Doc. 4-13 at 1-2.
[21] *Id.* at 2.
[22] *Id.* at 5.

5

**1. The likelihood of success on the merits**

Appellants argue that "the appeal presents serious legal issues for which appellants have a substantial case on the merits."[23] Even assuming *arguendo* that a "serious legal question is involved," the balance of the equities does not weigh heavily in favor of Appellants, as discussed below. In contending that the eviction date was arbitrarily chosen, Appellants ignore that this date was thirty days from the date of the eviction hearing and the bankruptcy court's order of eviction, and was a date chosen in deference to Appellants' own request to afford them sufficient time to vacate the Property. Moreover, as reflected in the foregoing review, Appellants have been living in the home for years without consistent payment of either their mortgage indebtedness or rent. The actions, initially of the Tenants, and later of the Debtor (which is controlled by the Goldenbergs), reflect a cavalier treatment of their creditors. Therefore, Appellants must demonstrate a likelihood of success on the merits of their appeal from the order of eviction. This they cannot do.

Appellants set out three grounds for their appeal: (1) that, upon finding the written lease invalid, the bankruptcy court did not consider the efficacy of an oral lease or a recorded extract of a lease; (2) that the bankruptcy court's order of eviction failed to follow state eviction procedure; and (3) that the Trustee's appointment rendered SBN's alternative motion for eviction moot.[24] In denying the motion to stay, the bankruptcy court addressed each of these arguments in its Reasons for Decision.[25]

Turning to the first, the bankruptcy court found that Appellants waived their right to argue that an oral lease existed when Appellants failed to present such an argument at the hearing.[26] This

---

[23] R. Doc. 4-1 at 2, 11-12.
[24] *Id.* at 8-12.
[25] R. Doc. 4-13; Bkr. Dkt. 85.
[26] R. Doc. 4-13 at 10-11; Bkr. Dkt. 85 at 10-11.

finding by the bankruptcy court is not clearly erroneous nor contrary to law. Appellants' memorandum in support does not actually allege the existence of an oral lease.[27] Neither does the memorandum or bankruptcy record reflect the existence of an extract of a recorded lease.[28] Accordingly, Appellants have waived their right to raise these arguments on appeal and cannot show a likelihood of success on this ground. *See Feld v. Zale Corp.* (*In re Zale Corp.*), 62 F.3d 746, 763 (5th Cir. 1995) (finding that "parties have waived their right to protest the lack of an adversary proceeding when the court afforded them all the protections of an adversary proceeding yet they knowingly failed to litigate a Rule 7001 issue which they had an opportunity to litigate"). Appellants do not contest or even address the bankruptcy court's finding that the written lease was invalid as to third parties pursuant to Section 13:3888(A) of the Louisiana Revised Statutes. Thus, because SBN foreclosed on the Property prior to the recordation of the lease, the bankruptcy court appears to be on sound footing in holding that the lease is invalid as to third persons. The court appears to be on equally sound footing in holding that the lease was unenforceable between lessor (the Debtor) and lessee (the Tenants) because the lessee was in default of its obligations to pay rent and property taxes, and due to its obvious self-interest, the Debtor was not motivated to enforce the Tenants' obligations.

Second, Appellants contend that the bankruptcy court had no authority to evict the Tenants because SBN was not the lessor under Articles 4701 and 4731 of the Louisiana Code of Civil Procedure. Rather, Appellants continue, the Trustee "was the only party who had the authority under Louisiana law to pursue an eviction."[29] The Court need not reach the question whether the bankruptcy court may order an eviction to disrupt a valid lease because Appellants do not have a

---

[27] *See* R. Docs. 4-1 at 8.
[28] *See* R. Docs. 4-1 at 8-9.
[29] R. Doc. 4-1 at 9-10.

valid and enforceable lease. *See In re Baylock*, 301 B.R. 443, 450 (E.D. Pa. 2003) (annulling an automatic stay *nunc pro tunc* when the debtor-squatter's possession of the premises was "neither legal nor equitable"). Furthermore, the Trustee, who has the right to reject even a valid, enforceable lease, joined the motion to evict.[30] *See* 11 U.S.C. § 365(a). By Appellants' own admission, then, the bankruptcy court had authority to order that Tenants vacate the Property.

Finally, Appellants argue that SBN did not have standing to request the eviction. Without any elaboration, Appellants say "it is questionable as to whether absent a sale motion filed by the Trustee the Court can grant a portion [that is, the portion asking for eviction] of the Motion requesting sale of the property."[31] The procedural history shows that SBN filed a motion entitled "Motion to (A) Immediately Evict Occupier from Collateral, and (B) Authorize Expedited Section 363 Sales Process, or in the Alternative, to Appoint a Chapter 11 Trustee pursuant to 11 U.S.C. § 1104, or in the Alternative to Terminate Exclusivity Period pursuant to Section 1121(D)."[32] As its title accurately reflects, SBN's motion requested various forms of relief, including appointment of a trustee, eviction, and a forced sale of the Property. At the hearing on SBN's motion, the bankruptcy court orally ordered the appointment of a Chapter 11 trustee. The court continued the hearing of SBN's requests for eviction and sale. At the subsequent hearing, the Trustee joined SBN's motion and requested eviction in order to sell the property.[33] Because the Trustee joined SBN's motion to evict, the bankruptcy court found that any question of SBN's standing was moot.[34] This Court holds that it was not clear error or contrary to law for the bankruptcy court to

---

[30] R. Doc. 4-13 at 11; Bkr. Dkt. 85 at 11.
[31] R. Doc. 4-1 at 10.
[32] R. Doc. 4-3.
[33] R. Doc. 4-13 at 1-2; Bkr. Dkt. 85 at 1-2.
[34] *Id.* at 11.

8

find that the issue of SBN's standing had been mooted when the Trustee effectively moved for eviction and sale by joining SBN's motion.

### 2. Irreparable Injury

Appellants cite no law for the proposition that the inconveniences and expense of moving out of their home constitutes irreparable injury, but instead, simply urge that failing to grant the stay would render the appeal moot.[35] As the bankruptcy court emphasized, however, the Trustee could evict, and has given every indication that he would evict, the Tenants from the Property even in the unlikely event of a successful appeal, because the Trustee has the right to reject even a valid, enforceable lease. Therefore, the Tenants' continued occupation of the Property is not contingent upon a successful appeal. Moreover, any harm to Tenants would be compensable through monetary damages for the balance of the term after rejection. *See* 11 U.S.C. § 365(h)(1)(B); *S. Ohio Sand, LLC v. Preferred Proppants, LLC*, 2016 WL 1457773, at *4 (N.D. Ohio Apr. 14, 2016) (holding no irreparable injury where "the Plaintiff's alleged harms are fully compensable by monetary damages"). Appellants have not shown irreparable injury, and the bankruptcy court's conclusion to this effect was not clear error or contrary to law.

### 3. Substantial Harm to Other Parties

Appellants contend that "the estate is enhanced" by their alternative or substitute security, which amounts to a promise to pay rent, maintain the property, pay taxes, and occupy the property so as to prevent upkeep expenses associated with an unoccupied home.[36] In other words, Appellants offer as alternative security their promise to fulfill the obligations they have ignored for years. In opposition, the various creditors submit that the Tenants' continued occupation of the Property decreases its value by preventing repairs from being made and preventing any

---

[35] R. Doc. 4-1 at 10.
[36] *Id.*

showing the Property to prospective purchasers.[37] In light of the Tenants' history of default, their present inability to make rent payments, and the Property's deteriorating condition, this Court holds that it was not clear error or contrary to law for the bankruptcy court to find that a stay would expose the creditors to substantial harm.

### 4. The Public Interest

Appellants claim that the public interest factor can be met by showing that a stay would not disserve or interfere with the public interest, and that the private transaction at issue here does not affect the public interest. In addition, Appellants contend that the public (including bankruptcy creditors) has a significant interest in ensuring a meaningful opportunity to appeal bankruptcy decisions.[38] SBN says the public interest is served by "ensuring that the most basic property law is enforced (that we must pay for the shelter we occupy)."[39] The bankruptcy court said the public interest factor was irrelevant.[40] While the public may be served by meaningful appellate review of bankruptcy decisions, the public is also served by meaningful relief to creditors when warranted under the law and facts of a particular case. On the record before this Court, it cannot be said that the public interest is disserved by denying the requested stay relief.

### B. The Supersedeas Bond

Appellants seek a stay without posting a supersedeas bond. Under Rule 62(d) of the Federal Rules of Civil Procedure, an "appealing party must post bond for the full amount of the judgment, plus costs of appeal, interest, and any estimated damages attributed to the delay." *ASARCO LLC v. Americas Mining Corp.*, 419 B.R. 737, 742 (S.D. Tex. 2009) (citing *Poplar Grove Planting & Refining Co. v. Bache Halsey Stuart, Inc.*, 600 F.2d 1189, 1191 (5th Cir. 1979)).

---

[37] R. Doc. 4-13 at 13; Bkr. Dkt. 85 at 13; R. Doc. 6 at 14.
[38] R. Doc. 4-1 at 11.
[39] R. Doc. 6 at 15.
[40] R. Doc. 4-13 at 13; Bkr. Dkt. 85 at 13.

District courts have discretion to reduce or order a substitute for the bond when the appellants either:

> (1) demonstrate objectively a present financial ability to facilely respond to a money judgment and present a financially secure plan for maintaining that same degree of solvency during the period of the appeal, or
>
> (2) demonstrate that [the appellants'] present financial condition is such that the posting of a full bond would impose an undue financial burden.

*Id.* (quotations omitted).

Appellants have not posted a supersedeas bond. In lieu of posting a bond, they propose "substitute security" consisting of paying the $25,000 monthly rent, escrow taxes, and homeowners' association fees – amounts they are already obligated to pay but have failed to pay for years.[41] Thus, Appellants' "substitute security" provides no security at all, but the empty promise to reform their past failings. In this sense, Appellants have made no effort to demonstrate the prerequisites for relief from the requirement to post a bond. Thus, that Appellants have not posted a supersedeas bond, and that they have offered inadequate "substitute security," represents a sufficient and independent alternative ground for upholding the bankruptcy court's denial of the requested stay.

---

[41] R. Doc. 4-1 at 2, 10-11.

Accordingly, for the foregoing reasons,

**IT IS ORDERED** that Appellants' emergency motion to stay execution of portions of the Order pending appeal (R. Doc. 4) and ex parte emergency motion for stay (R. Doc. 10) are **DENIED**.

New Orleans, Louisiana, this 7th day of November, 2018.

_____
BARRY W. ASHE
UNITED STATES DISTRICT JUDGE